FILED
IN THE OFFICE OF THE
CLERK OF SUPREME COURT
JUNE 3, 2021
STATE OF NORTH DAKOTA

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 98

Michael McDougall and Bonita McDougall,      Plaintiffs and Appellees

v.

AgCountry Farm Credit Services,      Defendant, Third-Party Plaintiff,

and Appellant

and

Any person in possession, and All persons
unknown, claiming any estate or interest in,
or lien or encumbrance upon, the real estate
described in the Third Party Complaint,      Third-Party Defendants

## No. 20200282

Appeal from the District Court of Towner County, Northeast Judicial District, the Honorable Donovan J. Foughty, Judge.

AFFIRMED AS MODIFIED.

Opinion of the Court by Crothers, Justice.

Patrick J. Sinner (argued) and Kip M. Kaler (appeared), Fargo, ND, for plaintiffs and appellees.

John D. Schroeder, Grand Forks, ND, for defendant, third-party plaintiff, and appellant.

# McDougall v. AgCountry Farm Credit Services, PCA
## No. 20200282

**Crothers, Justice.**

[¶1]   AgCountry Farm Credit Services, PCA appeals from a district court judgment granting Michael and Bonita McDougall's unjust enrichment claim and ordering AgCountry to pay $170,397.76. We direct the district court to modify the cost judgment, and we affirm as modified.

I

[¶2]   Kent and Erica McDougall were farmers and ranchers who began raising cattle in 2007. Michael and Bonita McDougall (collectively, "the McDougalls") are the parents of Kent McDougall. In 2013, Kent and Erica McDougall began financing their operations through AgCountry.

[¶3]   On various dates Kent and Erica McDougall obtained eight loans from AgCountry and signed promissory notes secured by real estate mortgages and security agreements. From fall of 2015 through March 30, 2016, Kent and Erica McDougall repeatedly requested AgCountry restructure their loans and assist them in obtaining operating funds. In discussions between its loan officer and Kent and Erica McDougall, AgCountry suggested additional collateral would assist in moving refinancing forward. Kent McDougall agreed to speak with Michael McDougall about transferring the home quarter to use as collateral with the understanding AgCountry would agree to lend additional funds.

[¶4]   Although Kent and Erica McDougall were in default on their loans with AgCountry, on March 31, 2016, they signed a mortgage on the home quarter to AgCountry. On the same date, Kent and Erica McDougall's promissory notes were modified to extend various payment dates to June 1, 2016. The home quarter warranty deed to Kent and Erica McDougall from the McDougalls was delayed because Michael McDougall needed to pay off an existing mortgage. Because of the delay, Kent and Erica McDougall did not take title to the home quarter until April 5, 2016. That same day, AgCountry recorded both the warranty deed and its mortgage on the home quarter.

1

[¶5]   On April 6, 2016, Kent and Erica McDougall's accounts with AgCountry were sent to special credit, a department for troubled loans. On April 7, Kent and Erica McDougall spoke with the Vice President for the Northwestern Region. Kent McDougall testified "I remember [the Vice President] told me I should have been sat down a long time ago and that there was no more money for me. That we were in trouble." On May 4, 2016, Kent and Erica McDougall were informed their request for restructuring was denied. Kent and Erica McDougall filed for bankruptcy in October 2016. As part of the bankruptcy proceedings, Kent and Erica McDougall initiated an adversary action against AgCountry and the McDougalls. The complaint in the adversary action asserted a count for avoidance of transfer, for avoidance of the mortgage on the basis of fraud, and to determine the transfer of the home quarter back to the McDougalls from Kent and Erica McDougall was appropriate and nonavoidable.

[¶6]   The bankruptcy court issued judgment in favor of AgCountry, denying relief to Kent and Erica McDougall or the McDougalls. Kent and Erica McDougall and the McDougalls appealed the judgment to the Eighth Circuit Court of Appeals Bankruptcy Appellate Panel. The Bankruptcy Appellate Panel dismissed the appeal as to the McDougalls, concluding the bankruptcy court lacked jurisdiction over any claim between the McDougalls and AgCountry in the adversary action because it did not affect the bankruptcy estate. On remand, the bankruptcy court entered judgment in the adversary action dismissing the McDougalls' claim for lack of subject matter jurisdiction.

[¶7]   On August 30, 2018, the McDougalls sued AgCountry seeking a declaration that the mortgage on the home quarter was void and asserting claims of deceit, conversion, estoppel and unjust enrichment. AgCountry moved for summary judgment, arguing the McDougalls' claims failed as a matter of law based on undisputed facts. AgCountry also argued the claims were barred by the prior judgment in Kent and Erica McDougall's bankruptcy proceedings. The McDougalls responded to the motion and moved for summary judgment. After a hearing, summary judgment was granted in favor of AgCountry dismissing the McDougalls' claims of conversion, promissory estoppel, unjust enrichment and deceit and granting a declaration of

superiority in AgCountry's mortgage on the home quarter. Judgment was entered and the McDougalls appealed.

[¶8] On appeal, the McDougalls argued the statute of frauds did not preclude their deceit claim and the district court erred by dismissing their unjust enrichment claim. *McDougall v. AgCountry Farm Credit Servs., PCA*, 2020 ND 6, ¶¶ 11, 20, 937 N.W.2d 546. AgCountry argued, among other things, that the McDougalls' claims were barred by collateral estoppel. This Court concluded the statute of frauds did not preclude the McDougalls' deceit claim, genuine issues of material fact existed on the deceit claim, and the district court erred in granting summary judgment. *Id.* at ¶ 19. This Court also concluded genuine issues of material fact existed as to the unjust enrichment claim, stating it was an alternative claim and it was possible if the McDougalls failed to prove their other claims, it would leave them without a remedy provided by law. *Id.* at ¶¶ 24-25. This Court affirmed the judgment in part, and reversed and remanded the part of the judgment dismissing the McDougalls' claims of deceit and unjust enrichment. *Id.* at ¶ 26.

[¶9] On remand, a trial was held on the McDougalls' claims of deceit and unjust enrichment. The jury found in favor of AgCountry on the deceit claim. Subsequently, the parties submitted briefing on unjust enrichment. The district court issued its findings of fact, conclusions of law, and order for judgment granting the McDougalls' claim for unjust enrichment. Judgment was entered on October 23, 2020, awarding the McDougalls the value AgCountry received for the home quarter, prejudgment interest as of the date AgCountry recorded its mortgage, and costs and disbursements. AgCountry appeals from the judgment.

II

[¶10] AgCountry argues the McDougalls' claims of deceit and unjust enrichment were barred by collateral estoppel. AgCountry claims the bankruptcy court's finding that AgCountry did not commit fraud against Kent and Erica McDougall precluded the McDougalls' assertion of unjust enrichment and deceit in this action. The McDougalls argue this Court's

3

affirmance of the district court's ruling on collateral estoppel is law of the case, and their claims are not barred by collateral estoppel.

[¶11] Under the principle of law of the case, a party may not on a second appeal relitigate issues resolved by the Court in the first appeal. This Court has said:

> "[A]s generally used, the law of the case is defined as 'the principle that if an appellate court has passed on a legal question and remanded the cause to the court below for further proceedings, the legal question thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain the same.'"

*Tom Beuchler Constr., Inc. v. City of Williston*, 413 N.W.2d 336, 339 (N.D. 1987).

[¶12] AgCountry's argument the McDougalls' claims are barred by collateral estoppel fails. AgCountry presented the same argument in its original motion for summary judgment. *McDougall I*, 2020 ND 6, ¶ 7. In its order for summary judgment the district court found the McDougalls' claims were not barred by collateral estoppel, instead finding the claims could not succeed as a matter of law. In *McDougall I*, we reversed and remanded the deceit and unjust enrichment claims, concluding the district court erred in determining there were no genuine issues of material fact. *Id.* at ¶ 26. This Court affirmed the remainder of the judgment. The same legal question previously determined by this Court will not be differently determined on a second appeal in the same case where the facts remain the same. *Tom Beuchler Constr., Inc.*, 413 N.W.2d at 339. AgCountry's argument as to collateral estoppel is barred by the law of the case.

III

[¶13] AgCountry argues the district court erred in finding it was unjustly enriched. AgCountry claims the court's findings and conclusions were inconsistent and irreconcilable with the jury's verdict on the deceit claim; the McDougalls were not impoverished; there was no causal connection between AgCountry's enrichment and the McDougalls' impoverishment; there was

4

justification for AgCountry's enrichment; and, the McDougalls possessed an adequate remedy at law.

[¶14] Five elements are required to establish unjust enrichment: "1. An enrichment; 2. An impoverishment; 3. A connection between the enrichment and the impoverishment; 4. Absence of a justification for the enrichment and impoverishment; and 5. An absence of a remedy provided by law." *Apache Corp. v. MDU Res. Grp., Inc.*, 1999 ND 247, ¶ 13, 603 N.W.2d 891. A court's findings of fact supporting an unjust enrichment determination are subject to the clearly erroneous standard of review. *Nelson v. Mattson*, 2018 ND 99, ¶ 17, 910 N.W.2d 171 (quoting *Broten v. Broten*, 2017 ND 47, ¶ 10, 890 N.W.2d 847). "A finding of fact is clearly erroneous if there is no evidence to support it, or if, based on the entire record, we are left with a definite and firm conviction a mistake has been made." *Nelson*, at ¶ 17 (quotation omitted).

A

[¶15] AgCountry argues an inconsistency between the findings of the judge and the jury in a bifurcated trial constitutes reversible error. AgCountry has provided no persuasive authority on this point. AgCountry attempts to rely on *Continental Resources, Incorporated v. P&P Industries, LLC I*, 2018 ND 11, 906 N.W.2d 105. However, *Continental* involved a jury trial where the district court denied several motions for a new trial which were based on perverse inconsistencies in the jury's verdict. *Id.* at ¶¶ 7, 28. The facts of that case are very different from the facts here.

[¶16] Here, the district court conducted a bifurcated trial where the deceit claim was tried by the jury and the unjust enrichment claim was tried by the judge. The jury filled out a verdict form answering the single question "Do you find by clear and convincing evidence that Defendant, AgCountry Farm Credit Services, PCA committed deceit?" The jury answered "no." In its findings of fact, conclusions of law, and order for judgment on the unjust enrichment claim, the district court stated:

> "This Court specifically finds, by clear and convincing evidence, that 1) AgCountry, via [the loan officer], represented to Kent and

5

Erica McDougall that the Home Quarter mortgage would further a refinancing or operating loan, 2) AgCountry, via [the loan officer], knew this would be relayed to the McDougalls and would serve as the basis for Kent and Erica McDougall to grant a mortgage on the same, and 3) AgCountry did not intend, from at least March 14th 2016, to ever use the mortgage as collateral for a refinance or operating loan, but as extra collateral upon which to collect *existing* debt."

It is unclear that the district court engaged in an analysis of deceit when the only question for the judge was whether AgCountry was unjustly enriched. The district court did utilize part of the analysis in its finding there was no justification for the McDougalls' impoverishment and AgCountry's enrichment. Further, this Court cannot be certain the district court's findings are inconsistent with the jury's findings because the jury answered only the broad question of whether AgCountry committed deceit. Therefore, any perceived inconsistency between the court and the jury's findings does not serve as a basis for reversal.

B

[¶17] AgCountry argues the McDougalls were not impoverished because they intended to give the home quarter to Kent and Erica McDougall for no consideration. AgCountry cites *Apache Corporation v. MDU Resource Group, Incorporated,* 1999 ND 247, ¶ 13, 603 N.W.2d 891, for the proposition no unjust enrichment exists when impoverishment is due to contractual arrangements between the plaintiff and a third party. However, our holding in *Apache* explains the reason the defendant was not unjustly enriched was because it did not receive a benefit from the plaintiff which would be inequitable to retain without paying for its value. *Id.* at ¶ 15. Although the plaintiff received less money than it expected when the defendant breached its obligations with a third party, Koch, the money the defendant saved was not a benefit at the direct expense of plaintiff. *Id.* Instead, the plaintiff's loss resulted from the way it calculated pricing factors in a valid contractual arrangement with Koch and thus the result was not contrary to equity. *Id.*

[¶18] The facts here are different than those in *Apache*. It is clear the McDougalls had a valid contractual arrangement with Kent and Erica McDougall. However, in contrast to *Apache*, the McDougalls retained no benefit from the transfer of their land to Kent and Erica McDougall. Michael McDougall testified he would not have transferred the home quarter if he knew Kent and Erica McDougall would not qualify for a refinance or operating loan. Unlike Apache's contractual arrangement with Koch, the McDougalls' transfer of the home quarter did not confer onto them some, but not all of the benefit they expected to receive. The benefit conferred on AgCountry through the McDougalls' transfer of the home quarter was a benefit at the direct expense of the McDougalls. The district court's finding the McDougalls were impoverished was not clearly erroneous.

C

[¶19] AgCountry argues the district court erred in finding a causal connection between the McDougalls' impoverishment and AgCountry's enrichment because of intervening acts or omissions of both the McDougalls and Kent and Erica McDougall.

[¶20] AgCountry claims this Court has held a lack of direct connection between the parties defeats the connection element required for an unjust enrichment claim. In *Thimjon*, we affirmed a summary judgment dismissal of an unjust enrichment claim due to a lack of causal connection between the enrichment and the impoverishment. *Thimjon Farms P'ship v. First Int'l Bank & Trust*, 2013 ND 160, ¶ 24, 837 N.W.2d 327. *Thimjon* involved a bank's retention of payments from a third-party contractor, Northern Grain, who utilized down payments from the plaintiffs to pay its operating loans with First International Bank. *Id.* at ¶ 3. When Northern Grain went out of business, the plaintiffs brought unjust enrichment claims against First International, which were dismissed. *Id.* at ¶¶ 3-7. This Court affirmed the dismissal, explaining First International was a legal stranger to the plaintiff because First International received no benefit directly from the plaintiff, instead receiving the funds directly from Northern Grain. *Id.* at ¶ 21.

[¶21] *Thimjon* is inapposite. Here, the district court specifically noted the McDougalls' impoverishment was based upon representations made by AgCountry, via the loan officer, to Kent and Erica McDougall which were then relayed to the McDougalls to effectuate a transfer of the home quarter. The court concluded it was reasonable "[The loan officer] knew his conversation with Kent McDougall would be relayed to Michael McDougall, as the title owner, in order for a mortgage upon the Home Quarter to occur." The court found credible Kent McDougall's testimony that the loan officer repeatedly represented refinancing looked good. The loan officer testified he never informed Kent and Erica McDougall that refinancing looked good. However, transcripts from proceedings in 2017 revealed he stated it was possible he said things looked good. Communications between the loan officer and other AgCountry officers established that despite the representations to Kent and Erica McDougall about the possibility of refinancing, there were extreme concerns about the past-due status of their accounts. Those extreme concerns were borne out by AgCountry transferring Kent and Erica McDougall's loans to special credit a mere two days after recording the home quarter deed.

[¶22] Through its representations to Kent and Erica McDougall, AgCountry led the McDougalls to believe mortgaging the home quarter would assist in extending a new operating loan to Kent and Erica McDougall. "[A] third party who derives gain from an agreement between others has not necessarily been unjustly enriched. . . . If, however, the third party has participated somehow in the transaction through which the benefit is obtained, that fact must be considered by the court." *Midland Diesel Serv. & Engine Co. v. Sivertson*, 307 N.W.2d 555, 558 (N.D. 1981). AgCountry's participation in Kent and Erica McDougall's acquisition of the home quarter was a basis upon which the district court could have found a causal connection between the impoverishment and enrichment. The court's finding of a connection was not clearly erroneous.

D

[¶23] AgCountry argues the district court erred in finding there was a lack of justification for AgCountry's enrichment. AgCountry asserts there was

8

justification because Kent and Erica McDougall received benefit from the loan extension as a result of the mortgage on the home quarter.

[¶24] AgCountry again relies on *Thimjon* to support its argument the enrichment was justified. In *Thimjon*, this Court concluded the claimants could not establish a lack of justification for First International's enrichment because First International paid value by lending money to Northern Grain and Northern Grain was free to use the down payments in the course of business. *Thimjon*, 2013 ND 160, ¶ 22.

[¶25] The district court concluded neither the McDougalls nor Kent and Erica McDougall received a material benefit or value from the transfer and mortgage of the home quarter. The court explained AgCountry knew there was no value behind its statement in documents signed by Kent and Erica McDougall that "[e]fforts will be made to refinance all of this debt into a FLCA loan secured by all real estate owned." The loan officer was asked several times by superiors about sending Kent and Erica McDougall's accounts to special credit prior to obtaining the mortgage on the home quarter. The testimony and evidence established that despite serious concerns about the viability of Kent and Erica McDougall's accounts, AgCountry continued to represent there was a possibility of refinancing and/or extending further operating loans in exchange for additional collateral. Based on the evidence, the court concluded AgCountry knew Kent and Erica McDougall's farming operation was doomed and even a 60-day extension on their current accounts would be pointless and absent any value. On the evidence presented, the district court's finding there was a lack of justification for AgCountry's enrichment was not clearly erroneous.

E

[¶26] AgCountry argues the district court erred in finding the McDougalls lacked an adequate remedy at law. According to AgCountry, the McDougalls could have pursued claims against Kent and Erica McDougall in bankruptcy court but did not do so. AgCountry acknowledges those claims are no longer available.

9

[¶27] Unjust enrichment is an alternative claim, and a legal claim which has yet to fail or succeed does not preclude a plaintiff from also asserting an unjust enrichment claim. *See McColl Farms, LLC v. Pflaum*, 2013 ND 169, ¶ 20, 837 N.W.2d 359; *McDougall I*, 2020 ND 6, ¶ 24. Similarly, a legal claim that is no longer available to the plaintiff is squarely within the definition of "absent" as intended by this Court's jurisprudence regarding unjust enrichment claims. Although the McDougalls at one time may have been able to assert claims against Kent and Erica McDougall, those claims were no longer available when the unjust enrichment claim was submitted to the district court, therefore the McDougalls had no legal claims remaining. With no remaining legal claims, the district court did not err in finding the McDougalls lacked a remedy at law.

IV

[¶28] AgCountry argues the district court abused its discretion in awarding the McDougalls prejudgment interest dating back to April 6, 2016. AgCountry asserts the North Dakota Century Code provides for prejudgment interest only for legal claims, and because unjust enrichment is an equitable claim, an award of prejudgment interest was an abuse of discretion.

[¶29] Section 32-03-05, N.D.C.C., provides "In an action for the breach of an obligation not arising from contract and in every case of oppression, fraud, or malice, interest may be given in the discretion of the court or jury." Section 32-03-04, N.D.C.C., further provides "Every person who is entitled to recover damages certain or capable of being made certain by calculation, the right to recover which is vested in the person upon a particular day, also is entitled to recover interest thereon from that day . . . ."

[¶30] The amount owed to the McDougalls was certain and calculable on a particular day, meaning it vested on that day. The district court found interest calculations should commence on the date AgCountry perfected its mortgage on the home quarter. Because neither the amount nor the date the obligation accrued was in dispute, the district court did not abuse its discretion in awarding the McDougalls prejudgment interest.

10

V

[¶31] AgCountry argues the district court abused its discretion in awarding the McDougalls costs and fees. AgCountry asserts it was an abuse of discretion to award the McDougalls the costs incurred in taking depositions during the bankruptcy proceedings which were ultimately used in the proceedings at the district court. According to AgCountry, the McDougalls should have sought an award of those costs from the bankruptcy court. Section 28-26-06, N.D.C.C., controls taxation of costs and disbursements from actions proceeding in state courts. Fees allowed include "[t]he necessary expenses of taking depositions and procuring evidence necessarily used or obtained for use on the trial." *Id.* The McDougalls' use of prior depositions prevented duplicative depositions and saved costs not only for themselves but for AgCountry. The district court did not abuse its discretion in awarding the McDougalls costs and fees in this action for the expenditures made during the bankruptcy court proceeding.

[¶32] AgCountry argues the district court erred in awarding costs to the McDougalls that included the filing fee in *McDougall I*. No costs were awarded to either party in that appeal, and the district court was without authority to award costs when we said they were not recoverable. *See Viscito v. Christianson*, 2016 ND 139, ¶ 7, 881 N.W.2d 633 (quoting *Carlson v. Workforce Safety & Ins.*, 2012 ND 203, ¶ 16, 821 N.W.2d 760) ("The mandate rule, a more specific application of law of the case, requires the trial court to follow pronouncements of an appellate court on legal issues in subsequent proceedings of the case and to carry the [appellate court's] mandate into effect according to its terms."). We therefore direct that the cost judgment in this case be reduced by $125.00 to reflect our denial of costs in *McDougall I*.

VI

[¶33] The district court judgment is affirmed as modified.

[¶34] Jon J. Jensen, C.J.
        Gerald W. VandeWalle
        Daniel J. Crothers
        Lisa Fair McEvers
        Jerod E. Tufte